UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| P.C., <u>et</u> <u>al.</u>, | : |
| | :   NO. 1:11-CV-398 |
|      Plaintiffs, | : |
| | :   **OPINION & ORDER** |
| | : |
|   v. | : |
| | : |
| | : |
| MILFORD EXEMPTED VILLAGE | : |
| SCHOOLS, | : |
| | : |
|      Defendant. | : |

This matter is before the Court on Plaintiffs P.C. and W.C.'s Motion for Summary Judgment (doc. 18), Defendant Milford Exempted Village School's Memorandum in Opposition thereto (doc. 21), and Plaintiffs' Reply in support thereof (doc. 22).  For the following reasons, the Court GRANTS Plaintiffs' motion (doc. 18).

**I.  BACKGROUND**

Plaintiffs P.C. and W.C. are the parents of minor R.C., a student at Milford Exempted Village School District (doc. 1).  R.C. is a child with a disability as defined by the Individuals with Disabilities Education Act 20 U.S.C. § 1400, <u>et</u> <u>seq.</u> (the "IDEA"), section 504 of the Rehabilitation Act, and Ohio law § 3323 O.R.C., <u>et</u> <u>seq.</u> (<u>Id.</u>).  In fact, R.C. has

1

multiple disabilities, including a mixed expressive and receptive language disorder, a mild cognitive impairment with an IQ of 60, executive functioning deficits, motor problems including having dysarthric speech, deficits in visual perception, attention difficulties, and memory problems (doc. 18). He has received special education and related services through an Individualized Education Plan[1] ("IEP") pursuant to the IDEA throughout his education, and has been educated in the Milford School District since pre-school (doc. 1).

Plaintiffs and Defendant school district were in agreement about R.C.'s IEPs until February of 2009, when Defendant first proposed moving R.C. from the privately-owned Langsford Learning Acceleration Center ("Langsford"), where R.C. had received reading services for third, fourth, fifth, and sixth grades, back to R.C.'s home school (doc. 18). Plaintiffs quickly filed a due process challenge to invoke the stay-put provision of the IDEA, and a settlement was reached a few months later (Id.). The settlement resulted in a 6th grade IEP that

---

[1] The "individualized educational program" is a "written statement for each child with a disability" and is developed collaboratively with, minimally, the child's parents, teachers and a school administrator. 20 U.S.C. §1414. It minimally includes the child's present academic performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially-designed instruction and services that will enable the child to meet those objectives. Id.

placed R.C. at Langsford for reading instruction and an increased reading instruction period from two to three hours per day (Id.).

In May 2010, the IEP team convened three times to write the 7th grade IEP. According to Plaintiffs, the team reached an impasse on the third day when they discussed R.C.'s reading placement pursuant to goals 1 and 2 of the IEP because Defendant "predetermined" R.C.'s return to his home school for reading services (Id.). Plaintiffs did not consent to placement at Milford for R.C.'s reading instruction, but the team agreed on the rest of the IEP (Id.). According to Defendant, however, it is "incumbent upon members of an IEP team to analyze data and reach individual conclusions about what the data means . . . . This did not preclude or displace a discussion by the IEP team" (doc. 21). Defendant claims that the impasse occurred not because they were unwilling to include Plaintiffs in the discussion but, instead, after R.C.'s parent asserted: "As a parent, I'm not going to consent to the change of placement or the reading intervention" (Id.).

Defendant school district requested an impartial due process hearing on August 6, 2010, requesting that R.C. be provided reading services at his home school as opposed to

Langsford.  At the time, R.C. was thirteen years old and was ready to begin 7th grade at Milford Junior High School (doc. 18).  Defendant claimed that R.C. would make similar progress at Milford, and that placement at R.C.'s home school would be the "least restrictive environment"[2] (doc. 9).  Plaintiffs did not agree to the change in placement, as they believed that R.C. had been making progress at Langsford for four years and wished to keep him there (doc. 1).

A due process hearing was held on October 28, October 29, November 4, November 5, and November 11 of 2010 (doc. 9). Among others, Plaintiffs called two experts and an instructor from Langsford to testify at the hearing.  The hearing officer (the "IHO") issued a decision on December 20, holding that Defendant met its burden of proof in demonstrating that its proposed placement for reading provided a "free appropriate public education"[3] ("FAPE") in the "least restrictive

---

[2] The "least restrictive environment" is a term of art from the statute at issue here.  Specifically, the statute reads, "To the maximum extent appropriate, children with disabilities…are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular school environment occurs only when the nature or severity of the disability of a child is such that education in regular classes…cannot be achieved satisfactorily."  20 U.S.C. §1412(5).

[3] Again, the term "free appropriate public education" springs from IDEA.  As noted by the Supreme Court, "Congress enacted IDEA in 1970 to ensure that all children with disabilities are provided 'a free appropriate public education

4

environment" (Id.).    The  IHO  ordered  that  R.C.'s  reading

placement  be  changed  to  the  reading  room  at  Milford  as  requested

by  Defendant,  that  his  IEP  be  amended  to  provide  for  one-on-one

instruction,  and  that  his  student  aide  be  trained  in  the  SRA

Corrective  Reading  Program  (Id.).

Plaintiffs  filed  a  Notice  of  Appeal  of  the  IHO's

decision  on  January  31,  2011,  alleging  6  errors  regarding  the

finding  of  fact,  7  errors  regarding  the  conclusions  of  law,  and

5  errors  regarding  the  rationale  (Id.).    Plaintiffs  requested

that  the  State  Level  Review  Officer  ("SLRO")  reverse  the

Decision  of  the  IHO  and  order  the  following:  (1)  that

Defendant's  due  process  complaint  be  dismissed  because  the  7th

grade  IEP  does  not  provide  a  FAPE  in  reading;  (2)  that  Defendant

keep  Langsford  as  the  placement  for  R.C.'s  7th   grade  reading

and  reading  comprehension  goals  for  three  hours  a  day;  (3)  that

the  7th  grade  IEP  be  amended  accordingly;  and  (4)  that  Defendant

provide  appropriate  transportation  (Id.).

The  SLRO  affirmed  the  decision  of  the  IHO,  stating

that  the  School  District's  proposed  reading  program  does  offer

FAPE.    The  decision  noted  that  the  "issue  is  not  whether  the

which  emphasizes  special  education  and  related  services  designed
to  meet  their  unique  needs  [and]  to  assure  that  the  rights  of
[such]  children  and  their  parents…are  protected.'"    Forest Grove
School Dist. v. T.A., 557 U.S. 230, 239 (2009)(internal
citations omitted).    See also 20 U.S.C. §1400(d)(1)(A),(B).

[Langsford Center] provided student with a FAPE or whether Student did or would continue to make meaningful education progress at the [Langsford Center] . . . . The question is whether school district's proposed IEP offered FAPE . . . . Only if the answer to that question is 'no,' does it become relevant whether [Langsford Center's] proposed program offers FAPE." (Id.).

Plaintiffs filed a Complaint to this Court on June 16, 2011, seeking both a reversal of the SLRO decision affirming the IHO's decision and a finding that the 7th grade IEP does not provide R.C. with a FAPE (doc. 1). Plaintiffs allege they were aggrieved by the SLRO Decision within the meaning of 20 U.S.C. § 1415(i)(2)(A)and appealed the SLRO's opinion, claiming that the SLRO erred as a matter of law (A) in his findings and conclusions; (B) by inappropriately allocating the burden of proof; (C) by erroneously applying an improper standard of review; and (D) by making findings of fact not supported by the preponderance of the evidence in the record and by ignoring facts in the record (Id.). Plaintiffs ask this Court to find that: (1) Defendant made a predetermination about R.C.'s reading placement; (2) the 7th grade IEP does not provide FAPE to R.C.; and (3) Langsford is the appropriate placement for R.C.'s reading services (Id.).

6

Plaintiffs then filed the instant Motion and Memorandum for Summary Judgment. Plaintiffs argue that this Court should overturn the SLRO's ruling affirming the IHO's decision by concluding that the 7th grade IEP does not provide R.C. with a FAPE because: (1) the IEP is missing requirements that both the IHO and SLRO found were necessary to provide R.C. with a FAPE; (2) Defendant plans to implement the IEP using the Corrective Reading program, which is not an appropriate reading program for R.C.; and (3) the IEP does not provide R.C. with an appropriate reading comprehension program (doc. 18). Plaintiffs further argue that the Lindamood-Bell reading and reading comprehension programs offered at Langsford are appropriate for R.C. and refute Defendant's argument that the change of placement to Milford is appropriate because it allows R.C. to be taught in the least restrictive environment (the "LRE") (Id.). Finally, Plaintiffs argue that the IEP should be rejected because Milford Schools predetermined the reading program in violation of the IDEA (Id.). Plaintiffs request that this Court reverse the SLRO decision, declare that the 7th grade IEP does not provide R.C. with a FAPE, and declare Plaintiffs the prevailing parties (Id.).

In its Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment, Defendant argues that "this case is only

about whether Milford is able to provide FAPE, a meaningful educational benefit, for purposes of reading instruction. . . . If it can, then the law clearly requires that the IEP identify Milford as the LRE, regardless of any perceived benefits of the reading program at Langsford" (doc. 21). Defendant contends that when more than one placement can provide FAPE, the LRE, which both sides agree is Milford Schools, is the only appropriate placement (Id.). Thus, Defendant concludes, Milford may offer any reading program that provides FAPE, and it is not required to use Plaintiffs' preferred method of teaching (Id.). Finally, Defendant argues that Langsford is not an appropriate placement and denies that it predetermined R.C.'s placement in violation of the IDEA (Id.).

In their Reply (doc. 22), Plaintiffs contend that Defendant concedes many facts and arguments by not rebutting Plaintiffs' evidence or arguments on the following matters:

> Milford Schools does not dispute Plaintiffs' proposed findings of fact that establish R.C.'s disabilities, strengths and weaknesses. Milford Schools does not dispute what the necessary components of a reading program for R.C. must contain, including the need to respond to his executive function disabilities, the need for R.C. to work at a slow pace, the need for a multi-sensory program or the need for one on one instruction. Nor does Milford dispute that R.C. has the potential to read at a third grade level. More significantly, Milford does not rebut, or even discuss, Plaintiff's argument that the 7th grade IEP does not provide R.C. with a FAPE. Milford argues that it may offer any reading program that does

> provide FAPE . . . . Finally, Milford does not respond
> to the argument that the IEP, while requiring a
> reading comprehension program, does not specify what
> research based, multisensory reading comprehension
> program Milford will use (Id.).

Plaintiffs also note that "if the Court determines that Milford's IEP does not provide a FAPE, then whether Milford is the least restrict environment is irrelevant" (Id.). Finally, Plaintiffs maintain that Defendant predetermined R.C.'s change of placement in violation of the IDEA and that the predetermination caused substantive harm amounting to the denial of a FAPE (Id.). Oral arguments were held on April 4, 2012, and this matter is ripe for the Court's consideration.

## II. APPLICABLE LEGAL STANDARDS

The purpose behind the IDEA is to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A); Bd. Of Educ. Of Hendrick Hudson Cent. Sch. Dist. V. Rowley, 458 U.S. 176, 200 (1982). Under the IDEA, states receive federal funds to guarantee a FAPE designed to "prepare [disabled children] for further education, employment, and independent living." Id. The IDEA allows procedural safeguards for the parents or school district to request a due process hearing contesting "any matter relating to the

identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A).

Procedurally, school districts must conduct an initial evaluation to determine the necessity for special education and the presence of a disability and then establish an IEP that provides a FAPE to the student. Deal v. Hamilton Bd. Of Educ., 392 F.3d 840, 853 (6th Cir. 2004). The IEP must contain "a specific statement of the child's current performance levels, the child's short-term and long-term goals, the educational and other services to be provided, and criteria for evaluating the child's progress." Id. at 853, quoting Knable v. Bexley City Sch. Dist., 238 F.3d 755, 763 (6th Cir. 2001). The meeting to develop an IEP must be held within 30 days of a determination that the student needs special education and related services, and the IEP needs to be reviewed and revised annually. 20 U.S.C. § 1415(a)(5); 34 C.F.R. § 300, 343(c)(1995). At the meeting to develop an IEP, input from the child's parents, teachers, special educators, a representative of the school district, and other individuals with special expertise must be heard. 20 U.S.C. § 1414 (d)(1)(B).

In 1997, the IDEA was amended to reflect congressional recognition that "more needed to be done to guarantee children

with disabilities adequate access to appropriate services." Forest Grove School Distct. v. T.A., 129 S. Ct. 2484, 2491, quoting S. Rep. No. 105-17, p. 3 (1997). Following this amendment, school districts must now create IEPs that confer a "meaningful educational benefit" gauged in relation to the potential of the child at issue in order to satisfy the substantive requirement under the IDEA. See Deal, 394 F.3d at 862. "Only by considering an individual child's capabilities and potentialities may a court determine whether an educational benefit provided to that child allows for meaningful advancement. In conducting this inquiry, courts should heed the congressional admonishment not to set unduly low expectations for disabled children." Id. Finally, the IDEA requires that students with disabilities be "educated with non-disabled children 'to the extent appropriate.'" Knable, 238 F. 3d at 764.

In Rowley, the Supreme Court established a two-part inquiry for determining whether school districts complied with the procedural and substantive components of the IDEA:

> [A] court's inquiry in suits brought under § 1415(e)(2) is twofold. First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the

courts can require no more.

Rowley, 458 U.S. at 206.  However, procedural violations alone do not entitle parents to relief.  Knable, 238 F.3d at 764. "Only if [the court] find[s] that a procedural violation has resulted in . . . substantive harm, and thus constituted a denial of [student's] right to a FAPE, may we 'grant such relief as the court determines is appropriate.'" Id.

When a party appeals an administrative decision to a district court, the court is to review the administrative record, may hear additional evidence upon request of a party, and may grant relief it determines is appropriate based on the preponderance of the evidence.  20 U.S.C. § 1415(i)(2)(A). Summary judgment is appropriate when there is no dispute as to a material question of fact and one party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56.  This Court must view all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  Only disputed material

facts, those "that might affect the outcome of the suit under the governing law," will preclude summary judgment. Id. at 248. The function of the court in assessing a summary judgment motion is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. If after reviewing the record as a whole a rational fact-finder could not find for the nonmoving party, summary judgment is appropriate since there is no genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The standard in the instant case differs from that of a typical summary judgment motion in that the Court is required to apply a "modified de novo" review to appeals from administrative proceedings under the IDEA. N.L. ex rel. Mrs. C. v. Knox Cnty. Schools, 315 F.3d 688, 692 (6th Cir. 2003). The standard dictates that the Court "make findings of fact based on a preponderance of the evidence contained in the complete record, while giving some deference to the fact findings of the administrative proceedings, particularly when educational expertise is essential to the findings." Id. With regard to substantive issues, the "administrative findings in an IDEA case may be set aside only if the evidence before the court is more likely than not to preclude the administrative decision from

13

being justified based on the agency's presumed educational expertise, a fair estimate of the worth of the testimony, or both." Burilovich ex rel. Burilovich v. Bd. of Educ. Of the Lincoln Consol. Schools, 208 F.3d 560, 566-67 (6th Cir. 2000). However, when educational expertise is not relevant to the findings, less weight is afforded to the administrative decision because a "federal court is just as well suited to evaluate the situation." Kings Local School Dist. Bd. Of Educ. v. Zelazny, 325 F.3d 724, 728 (6th Cir. 2003). Finally, with regard to the specific issue of predetermination, the standard of review is de novo because "predetermination is . . . a mixed question of law and fact. Deal, 392 F.3d 840 at 857; Knable, 238 F.3d at 766.

**III. ANALYSIS**

Plaintiffs argue that this Court should overturn the SLRO's ruling affirming the IHO's decision based on both procedural and substantive violations of the IDEA. Under the procedural prong, Plaintiffs argue that the IEP should be rejected because Milford Schools predetermined the reading program in violation of the IDEA. Defendant directly denies allegations that it predetermined R.C.'s reading placement. Under the substantive prong of the IDEA, Plaintiffs argue that R.C.'s 7th grade IEP does not provide him with a FAPE and that instead, the Lindamood-Bell reading and reading comprehension

14

programs at Langsford are appropriate for R.C. Defendant contends that the school district may offer any reading program that provides FAPE, that it does not have to specify a teaching methodology in the IEP, and that it did not predetermine R.C.'s reading placement for 7th grade. The Court shall proceed to discuss each matter separately.

**A.    Defendant committed a procedural violation under IDEA by pre-determining R.C.'s 7th grade reading placement.**

The Court finds Plaintiffs' contention that Milford predetermined R.C.'s change of placement in violation of the IDEA to be borne out by the record. The standard of review here is de novo because "predetermination is . . . a mixed question of law and fact. Deal, 392 F.3d at 857; Knable, 238 F.3d at 766. Plaintiffs contend, and this Court agrees, that the preponderance of evidence shows that Milford school officials did not walk into the first IEP meeting with open minds because they had already made up their minds about withdrawing R.C. from Langsford Center before the first May 2010 IEP meeting.

The record shows that as early as November 2009, school members on the IEP team formed early opinions that R.C. should return to Milford. Preplanning notes from a preplanning meeting on April 12, 2010, show that Milford recommended R.C. to be switched from Langsford back to his home school for his 7th grade IEP. More troubling to the Court, R.C.'s teacher Donna

15

Roberts testified that Milford was prepared to "go the whole distance this year which means the [parents] will be forced into due process." In addition, Ms. Roberts had conversations before April 12, 2010 with IEP school team members recommending that R.C. be pulled out of Langsford. All of this occurred before the very first IEP planning meeting in May of 2010, and before Milford Schools had decided what reading program they were going to use for R.C.'s 7th grade reading IEP. Indeed, as Plaintiffs note, rather than discussing with the parents the type of reading program R.C. would most benefit from, or how the options at Milford would be successful for R.C., let alone which specific program would be used and how it would be implemented, the only consistent refrain from Milford Schools was that R.C. would no longer attend Langsford. The record reads as though Milford Schools made a negative choice—that is, it decided only what would not happen, not that it in good faith engaged in a process to determine what should happen in R.C.'s best interest. From the record, it appears clear to this Court that Milford Schools had decided before the IEP meeting that R.C. would return to Milford for reading instruction, an impermissible pre-determination.

Defendant argues that it was entirely appropriate for some members of the IEP team to individually conclude that they

no longer supported a Langsford placement prior to the meeting, and that this does not amount to predetermination. Defendant cites to Knox County Schools to support its proposition that "the 6th Circuit has held that school officials are permitted to form opinions and compile prior to IEP meetings, so long as officials 'come to meeting with suggestions and open minds, and not a required course of action'" (doc. 21, quoting Knox County Schools, 315 F. 3d at 692). However, this Court finds that Defendant did not go into the first IEP meeting with an open mind. While Defendant argues that the word "decision" was never used prior to May 2010, Knox states nothing about the terminology used, but rather that officials must come to the meeting with open minds. While it is true that school officials may permissibly form opinions prior to IEP meetings, the record here shows that officials went beyond forming opinions and, instead, became impermissibly and deeply wedded to a single course of action: that R.C. not continue at Langsford.

Contrary to Defendant's assertion, Knox County Schools is not on all fours with this case. In Knox, the student primarily had behavioral issues, and the IEP team convened to discuss whether the student was eligible for special education for the first time. The IEP team had to decide whether to maintain the student's status quo situation or change the

student's status to one requiring special education services. Here, R.C.'s IEP team convened to discuss changing R.C.'s status quo placement from Langsford, where he had his third, fourth, fifth, and sixth grade reading assignments, back to his home school. Furthermore, Knox is distinguishable because there are specific, measurable criteria to use to determine which students qualify for "special education" and so it is more likely for an IEP member to form an appropriate opinion based on quantitative data and past medical and educational records before an official evaluation meeting. Here, there was no evidence of any specific criteria IEP team members used when forming their opinions to withdraw R.C. from Langsford well in advance of the first IEP meeting, let alone any evidence of specific criteria used to determine the best new course of action for R.C.

In sum, the Court finds by a preponderance of the evidence that Defendant did not "come to [the] meeting with suggestions and open minds," and therefore committed a procedural violation under the IDEA. Knox, 315 F.3d at 692.

**B. Defendant's procedural violation caused substantive harm to R.C., thus denying R.C. a FAPE.**

While a Court should "strictly review an IEP for procedural compliance," technical deviations will not render an IEP invalid. Deal, 392 F.3d at 854, quoting Dong ex rel. Dong v. Bd. of Educ. Of the Rochester Cmty. Sch., 197 F.3d 793, 799

18

(6th Cir.1998). However, procedural violations that result in substantive harm constitute a denial of a FAPE, and relief may be granted. <u>Knable</u>, 238 F.3d at 764. Substantive harm occurs when parents are denied "meaningful participation" in a student's IEP development. <u>Deal</u>, 392 F.3d at 857.

Plaintiffs point the Court to <u>Deal</u>, a case in which the Sixth Circuit recognized the importance of specifying educational methodology in a student's IEP: "Indeed, there is a point at which the difference in outcomes between two methods can be so great that provision of the lesser program could amount to denial of a FAPE." <u>Deal</u>, 392 F.3d at 862. Unlike Plaintiffs, the Court does not read <u>Deal</u> to hold that an explicit discussion of methodology must be present in every IEP or IEP meeting. However, the Court nonetheless finds <u>Deal</u> supportive of Plaintiff's position. In this case, where R.C. has demonstrated reading success over four years using the Lindamood-Bell method, the Court finds that neither the parents nor the school could effectively determine whether the IEP confers a "'meaningful educational benefit' gauged in relation to [R.C.'s] potential", <u>id.</u>, without being able to compare methods and how they might affect R.C.'s potential. This comparison was not possible here because Milford Schools would not engage the parents in a discussion about the methods it

proposed using should R.C. not return to Langsford. Simply put, under the facts of this case, Plaintiffs were denied meaningful participation in R.C.'s IEP development process when Defendant never proposed the specific methodology it would use at Milford, subsequently never allowing parents the opportunity to compare any "two methods." Id.

Defendant argues that methodology does not need to be specified in the student's IEP. As noted above, the Court agrees that Deal does not explicitly require that in all cases. However, while the IDEA does not use the term "methodology," it nevertheless states that the IEP has to include a "statement of the special education and related services and supplementary aids and services . . . to be provided to the child, or on behalf of the child, and a statement of the program modifications or supports for school personnel that will be provided for the child." 20 U.S.C. § 1414(d)(1)(A)(i). When coupled with the Sixth Circuit's view that, "there is a point at which the difference in outcomes between two methods can be so great that provision of the lesser program could amount to denial of a FAPE," this Court believes that in this case[4]

---

[4] This is especially true, as noted above, where the child has been successful in a certain methodology and a certain structure for years and where, as here, the parents were told that R.C.'s reading placement would be reduced from the three hours daily at Langsford to only 90 minutes, and R.C.'s past

methodology should have been specified and discussed by Defendant at the IEP meetings and that failure to do so amounts to a denial of meaningful participation. See _Deal_, 392 F.3d at 862.

Defendant further argues that the IEP does not have to be developed in a specific order, and that the "sequence of steps to reach [IEP] agreement is not significant" (doc. 21). This Court disagrees. The Supreme Court has recognized the importance of the IDEA's procedural safeguards: "[T]he congressional emphasis upon full participation of concerned parties throughout the development of the IEP . . . demonstrates the legislative conviction that procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP." _Rowley_, 458 U.S. at 206. The IDEA not only guarantees a FAPE to children with disabilities, but it is also meant to "assure that the rights of [such] children and their parents or guardians are protected." _School Comm. Of Burlington v. Department of Ed. Of Mass._, 471 U.S. 359, 367.

Here, the preponderance of the evidence shows that Defendant first decided to withdraw R.C. from Langsford and then began to decide on what goals to pursue and which methodologies

experience with reduced instruction time in math was not

to try.  As cited by the Sixth Circuit in <u>Deal</u>, <u>Spielberg ex</u>
<u>rel. Spielberg v. Henrico County Public Schools</u>, 853 F.2d 256
(4th Cir. 1988) provides a leading discussion on
predetermination: "There, the district court concluded, based on
a series of letters written before the IEP meeting that focused
on a change in placement, that the school district had decided
to change the disabled student's placement before developing an
IEP to support the change."  <u>Deal</u>, 392 F.3d at 587, citing
<u>Spielberg</u>, 853 F.2d 256.  The Fourth Circuit then affirmed the
district court's conclusion, finding that this was a procedural
violation that deprived the student of a FAPE:

> Under the EHA [the predecessor to the IDEA], the
> general rule is that placement should be based on the
> IEP.  <u>34 C.F.R. § 300.522</u>.  The appendix interpreting
> the EHA regulations states that 'IEP objectives must
> be written before placement.'  <u>34 C.F.R. Part 300,</u>
> <u>App. C.</u>, Question 42.  The decision to place [the
> student] at [a particular placement] before developing
> an IEP on which to base that placement violates this
> regulation as interpreted by the Secretary of
> Education.  It also violates the spirit and intent of
> the EHA, which emphasizes parental involvement.
> <u>Spielberg</u>, 853 F.2d at 259.

Parental involvement and discussion during the development of
the IEP has to be meaningful: "In order to fulfill the goal of
parental participation in the IEP process, the school district
was required to conduct, not just an IEP meeting, but a
meaningful IEP meeting."  <u>Deal</u>, 392 F.3d at 857, citing <u>W.G. v.</u>

---

favorable.

_Board of Trustees of Target Range School District no. 23_, 960 F.2d 1479 (9th Cir. 1992). Because Plaintiffs here were denied a meaningful opportunity to participate in the development of R.C.'s IEP, the predetermination resulted in substantive harm that amounted to denial of a FAPE for R.C.

## C. This Court need not decide whether Milford committed a substantive violation of the IDEA.

Under the second prong of _Rowley_, which deals with substantive violations, the court must analyze whether an IEP is reasonably calculated to enable the child to receive educational benefits. _Rowley_, 458 U.S. at 206-07. The Sixth Circuit has made it clear that the "preponderance of evidence language in the [IDEA] is by no means an invitation to the courts to substitute their own notions of sound education policy for those of the school authorities which they review." _Thomas v. Cincinnati Bd. Of Educ._, 918 F.2d 618, 624 (6th Cir. 1990, quoting _Rowley_, 458 U.S. at 206). Federal courts are "generalists with no expertise in the educational needs of handicapped children and will benefit from the fact-finding of a state agency, which is presumed to have expertise in the field." _Burilovich_, 208 F.3d at 566. Moreover, while this Court is required to give some deference to administrative findings in an IDEA case, even greater weight is due to an administrative officer's determinations on matters for which educational

expertise is relevant. <u>Deal</u>, 392 F.3d at 865.

In order to find a substantive violation, the Court must find that Defendant's proposed IEP does not confer a meaningful educational benefit to the student. Plaintiff has asked this Court to declare that Defendant substantively failed to provide R.C. with a FAPE and that the Langsford Center fulfills the substantive requirements under the IDEA. The Court has heard and considered both Plaintiffs' and Defendant's arguments on the matter and is cognizant of the deference the Court must apply on matters for which educational expertise is relevant. However, because the Court has already determined that Defendant committed a procedural violation that resulted in substantive harm denying Plaintiffs meaningful participation in the IEP development process, the Court need not decide whether Defendant's proposed IEP amounted to a substantive violation of the IDEA. <u>See</u> <u>Knable</u>, 238 F.3d at 767 (noting that addressing the second Rowley prong is not necessary where a procedural violation results in the denial of a FAPE).

**D. The Court declares Plaintiffs to be the prevailing parties and reverses the SLRO's decision with regard to the procedural violation under the IDEA.**

Once a procedural and/or substantive violation is found under the IDEA, the court is authorized to "grant such relief as the court determines is appropriate." <u>20 U.S.C. §</u>

1415(i)(2)(B)(iii).  Parents are to be declared the prevailing parties if they "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Keene v. Zelman, 337 F. Appx 553, 556 (6th Cir. 2009).  Because the Court has found that Milford Schools committed a procedural violation resulting in substantive harm, the Court hereby declares Plaintiffs the prevailing parties, and Plaintiffs may submit a fee petition for reasonable attorney fees and expenses.  20 U.S.C. § 1415(i)(3)(B).  Finally, the Court reverses the SLRO's decision with regard to the procedural violation under the IDEA.  The Court does not issue a ruling on Defendant's alleged substantive violation.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Defendant committed a procedural violation of the IDEA that resulted in substantive harm to R.C. and thus, to that extent, GRANTS Plaintiffs' Motion for Summary Judgment (doc. 19).  The Court thus reverses the SLRO's decision regarding the procedural violation of the IDEA and declares Plaintiffs the prevailing parties.

SO ORDERED.

Dated:  January 17, 2013 /s/ S. Arthur Spiegel
                         S. Arthur Spiegel
                         United States Senior District Judge